UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSEPH PIASECKI,

                Plaintiff,

     v.

COUNTY OF ERIE,
ERIE COUNTY SHERIFF DEPARTMENT, and
DEPUTY PAUL REED,

                Defendants.

**DECISION AND ORDER**
20-CV-1590S

## I. INTRODUCTION

In this action, Plaintiff Joseph Piasecki alleges that Defendant Deputy Paul Reed violated his constitutional rights when he arrested him in the Town of Elma on July 31, 2019.  Presently before this Court are Defendants' objections to the magistrate judge's decision denying them leave to amend their answer and Defendants' motion for summary judgment.  (Docket Nos. 13, 28.)  For the following reasons, the objections are denied, several claims and defendants are dismissed by agreement, and the motion for summary judgment is denied.

## II. BACKGROUND

### A.  Facts

Joseph Piasecki and Makaela Previty were once romantically involved.  But the relationship soured at some point, and on October 22, 2018, the Elma Town Court issued an Order of Protection against Piasecki in Previty's favor.  (Defendants' Statement of Undisputed Material Facts ("Defendants' Statement"), Docket No. 13-14, ¶

1

1; October 22, 2018 Order of Protection, Docket No. 13-2.)  The Order of Protection provided that Piasecki must

> [r]efrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching, intimidation, threats or any criminal offense or interference with the victim or victims of, or designated witnesses to, the alleged offense and such members of the family or household of such victim(s) or witness(es) as shall be specifically named Makela [sic] Previty.

(October 22, 2018 Order of Protection.)  The order further provided that it would remain in force through and including October 22, 2020.  (Id.)

Nearly a year later, and with the Order of Protection still in force, Previty called 911 in the early hours of July 20, 2019, to report that Piasecki had driven his vehicle into the side of her house and was attempting to dislodge a window-mounted air conditioner to gain entry to her home.  (Defendants' Statement, ¶ 2.)  Previty further reported that Piasecki was doing "donuts" on her lawn and had damaged her boyfriend's truck.  (Id.)  Piasecki denies these allegations.  (Plaintiff's Opposing Statement of Material Facts ("Plaintiff's Statement"), Docket No. 19-4, ¶ 2.)

In response to Previty's call, the 911 dispatcher sent Deputy Reed and other officers to the scene.  (Defendants' Statement, ¶ 2a; Affidavit of Paul Reed ("Reed Aff."), Docket No. 13-4, ¶ 6.)  Before they arrived, the dispatcher relayed Previty's allegations and identified Piasecki as the alleged offender.  (Reed Aff., ¶¶ 7, 9.)  The dispatcher further informed the officers that Piasecki was the subject of a valid and

2

enforceable Order of Protection.  (Id. ¶ 8.)

Upon arrival, Deputy Reed was unable to locate Piasecki.  (Id. ¶ 11.)  But after speaking to Previty and other witnesses, Deputy Reed determined that sufficient probable cause existed to arrest Piasecki for criminal contempt (i.e., violating the Order of Protection) and criminal mischief.  (Id. ¶ 10.)  The dispatcher thereafter advised Deputy Reed that Piasecki had returned to his residence.  (Id. ¶ 11.)

Based on the information from the dispatcher, Deputy Reed traveled with another officer to Piasecki's residence at around 4:00 a.m.  (Defendants' Statement, ¶ 3; Reed Aff., ¶ 13.)  The officers could see Piasecki in the house, but he refused to open the door, answer questions, or submit to arrest.  (Defendants' Statement, ¶ 3; Reed Aff., ¶ 15.)  The officers left Piasecki's house intending to locate him again later that day. (Reed Aff., ¶ 16.)

Deputy Reed returned to Piasecki's residence at 10:00 p.m.  (Defendants' Statement, ¶ 3a; Reed Aff., ¶ 17.)  He encountered Piasecki's brother, but could not locate Piasecki.  (Reed Aff., ¶ 17.)  Deputy Reed then reached Piasecki by telephone and told him that a warrant would issue for his arrest if he did not voluntarily turn himself in by 6:00 a.m. on July 22, 2019.  (Id. ¶ 18.)  Deputy Reed thereafter continued his efforts to locate Piasecki, but was unsuccessful.  (Id. ¶ 19.)

On July 22, 2019, with no knowledge of any attempt by Piasecki to self-surrender, Deputy Reed filed two criminal complaints against him in Elma Town Court for criminal contempt and criminal mischief, along with an application for an arrest warrant.  (Defendants' Statement, ¶ 4; Reed Aff., ¶¶ 19, 21.)  The court clerk received

3

Deputy Reed's request and drafted the arrest warrant, but it was never signed or issued.[1]  (Defendants' Statement, ¶ 4a; Plaintiff's Statement, ¶¶ 10, 11; Draft Arrest Warrant, Docket No. 13-12; Deposition of Brenda Barry ("Barry Dep."), Docket No. 13-11, pp. 32-33.)

While the arrest warrant was pending the judge's signature, Piasecki called the court clerk and advised that he wanted to turn himself in.  (Barry Dep., pp. 7, 15, 16, 31, 34.)  The court clerk informed the presiding judge of Piasecki's call, and the judge directed the clerk to tell Piasecki that an arrest warrant would not issue so long as Piasecki voluntarily appeared in court on July 25, 2019.  (Id. pp. 15, 31, 32.)  The court clerk relayed this information to Piasecki, who agreed to appear.  (Id. pp. 31-32.)

On July 25, 2019, Piasecki appeared in court on the criminal complaints as directed.  (Defendants' Statement, ¶ 6; Barry Dep. p. 53.)  The judge adjourned the case until August 5, 2019, due to an attorney conflict-of-interest, and released Piasecki on his own recognizance.  (Defendants' Statement, ¶ 6; Barry Dep. p. 53.)

Deputy Reed was never informed that Piasecki had contacted the court clerk, that the arrest warrant never issued, or that Piasecki had appeared in court on the criminal complaints and was released on his own recognizance.   (Defendants' Statement, ¶ 5; Plaintiff's Statement, ¶ 5.)

On July 31, 2019, at 1:47 a.m., Deputy Reed was again dispatched to Previty's residence after a neighbor called 911 to report a suspected break-in.  (Reed Aff., ¶¶ 23,

---

[1] As the court clerk explained: "[The arrest warrant] was never issued.  It was never submitted into the system, it was generated through the computer as a letter, but it was never signed and processed through the system that it gets sent through."  (Barry Dep., p. 35.)

24; Defendants' Statement, ¶ 7.)  Previty showed Deputy Reed text messages from an unknown number that appeared to be coming from Piasecki.  (Reed Aff., ¶ 25, Defendants' Statement, ¶ 7.)  One of the messages indicated that Piasecki was at a park across from Previty's house and wanted to talk to her.  (Reed Aff., ¶ 25.)  Deputy Reed went to the park and encountered Piasecki.  (Id. ¶¶ 25, 26.)

Deputy Reed maintains that Piasecki was not initially at the park when he arrived, but that he drove up approximately 10 minutes later.  (Reed Aff., ¶ 25.)  Piasecki maintains that Deputy Reed pulled him over on Bowen Road as he was traveling from his friend's house to a gas station.  (Deposition of Joseph Piasecki ("Piasecki Dep."), Docket No. 13-10, pp. 10-11, 31.)  According to Piasecki, Deputy Reed allegedly "kind of pulled" him out of the car, walked him to the back of the vehicle, and handcuffed him with "definitely a bit more force than would be usual upon cuffing," leaving "cuff marks" around his wrists.  (Id. pp. 11, 38, 43.)

Piasecki claims that he informed Deputy Reed that the arrest warrant never issued and that he had already appeared on the criminal charges on July 25, 2019, yet Deputy Reed arrested him anyway.  (Piasecki Dep., p. 11-13, 21, 26.)  Deputy Reed maintains that he tried to verify Piasecki's claims by having the dispatcher contact the presiding judge, but those attempts were unsuccessful.  (Reed Aff., ¶ 27.)  With the judge unreachable, and with no other way to verify Piasecki's claims, Deputy Reed arrested Piasecki and transported him to the Erie County Holding Center, where he remained until later that morning when the judge ordered him released.  (Id.; Defendants' Statement, ¶ 8; Plaintiff's Statement, ¶ 8.)

5

Piasecki maintains that his arrest was unlawful.  Deputy Reed maintains that he had sufficient probable cause to arrest Piasecki given his personal knowledge of Piasecki's prior actions and the criminal complaints filed against him.  (Reed Aff., ¶ 26.) Piasecki ultimately pleaded guilty to harassment in the second degree and was ordered to pay a $125 surcharge for the events that occurred at Previty's house on July 20, 2019.  (Barry Dep., pp. 16, 22; Certificate of Conviction, Docket No. 13-13; Plaintiff's Statement, ¶ 9.)

## B. Procedural History

On October 14, 2020, Piasecki sued Defendants in New York State Supreme Court, County of Erie.  (Complaint, Docket No. 1-2.)  Approximately two weeks later, Defendants removed the state action to federal court.  (Notice of Removal, Docket No. 1.)  Once removed, this Court referred all pretrial proceedings to the Honorable Leslie G. Foschio, United States Magistrate Judge.  (Referral Order, Docket No. 2.)

Discovery proceedings commenced with the Rule 16 conference and issuance of case-management orders on December 29, 2020, and July 28, 2021.  (Docket Nos. 4, 5, 11.)  After discovery concluded, Defendants timely filed their pending motion for summary judgment on March 1, 2021.  (Docket No. 13.)  Piasecki did not file a dispositive motion.  After full briefing, this Court took Defendants' motion for summary judgment under advisement without oral argument on June 14, 2022.  (Docket Nos. 13, 19, 22.)

During briefing of the summary judgment motion, Defendants moved for leave to amend their answer.  (Docket No. 20.)  After full briefing, Judge Foschio denied

Defendants' motion on November 10, 2022.  (Docket Nos. 20, 23, 24, 27.)  Defendants filed timely objections to Judge Foschio's decision on November 22, 2022.  (Docket No. 28.)  Piasecki failed to respond to Defendants' objections, which this Court took under advisement without oral argument at the conclusion of the briefing schedule on December 21, 2022.

## III. DISCUSSION

Piasecki asserts five causes of action.  The first claim alleges assault and battery against Deputy Reed arising from the July 31, 2019 arrest.  (Complaint, ¶¶ 14-20.)  The second claim alleges false arrest, illegal strip search,[2] and false imprisonment against each defendant.  (Id. ¶¶ 21-36.)  The third claim alleges negligent hiring, supervision, training, and retention against each defendant.  (Id. ¶¶ 37-40.)  The fourth claim alleges violations of the New York state constitution (due process, free speech, unreasonable search and seizure) against each defendant.  (Id. ¶¶ 41-43.)  The final claim alleges violations of the federal constitution (excessive force, due process, free speech, unreasonable search and seizure) against each defendant pursuant to 42 U.S.C. § 1983.  (Id. ¶¶ 44-52.)

Before turning to the motions, this Court notes that Piasecki concedes that his third cause of action and each of his claims against the County of Erie and the Erie County Sheriff's Office must be dismissed.  (Defendants' Memorandum of Law, Docket No. 13-15, pp. 4-10 (arguing that the claims against the county defendants and the third

---

2 Although Piasecki alleges in his complaint that Deputy Reed strip-searched him, see Complaint, ¶ 22, he testified in his deposition that he was not strip-searched until he was processed at the Erie County Holding Center, see Piasecki Dep., p. 14.

cause of action must be dismissed); Plaintiff's Memorandum of Law, Docket No. 19-5, p. 2 ("In response to the defendants['] motion for summary judgment, plaintiff concedes dismissal of the claims against the County of Erie and the Erie County Sheriff's Department, as well as the negligent hiring, supervision . . . causes of action.").)  The entire third cause of action and all claims against the County of Erie and the Erie County Sheriff's Office will therefore be dismissed by agreement, leaving Deputy Reed as the sole defendant in the first, second, fourth, and fifth causes of action.

## A. Defendants' Objections to the Magistrate Judge's Decision and Order

### 1. Background

As noted, Piasecki originally filed this action in state court and asserted both federal and state claims.   The complaint therefore contains allegations concerning compliance with New York General Municipal Law §§ 50-e and 50-h.  Those allegations are contained in paragraphs 7 and 9-12 of the complaint.

Breaking up that series of allegations is paragraph 8, which alleges that Deputy Reed violated Piasecki's federal constitutional rights as follows:

> That on July 31, 2019, as part of an ongoing and continuing course of harassment directed toward PLAINTIFF and his family, while acting pursuant to the authority of the COUNTY OF ERIE, as a member of the ERIE COUNTY SHERIFF's DEPARTMENT, and in his official capacity as deputy Sheriff, the defendant DEPUTY PAUL REED subjected the claimant, JOSEPH PIASECKI, to deprivation of the rights and privileges secured and protected by the Constitution of the laws of the United States, specifically the constitutional right to be free of unlawful searches and seizures, the right to be free from any unlawful arrest, the right to be free from unlawful/false imprisonment and of the privileges and immunities guaranteed citizens of the United States by the

> United States Constitution, Amendments, 4, 5, 8 and § [sic]
> of the 14th Amendment.  DEPUTY PAUL REED, either alone
> and or in concert with others, did wrongfully stop, search,
> assault, batter and arrest Claimant on Bowen Road in the
> Town of Elma, County of Erie, and State of New York.

(Complaint, ¶ 8.)

When  Defendants  filed  their  answer  on  October  26,  2020,  they  admitted  the

allegations in paragraphs 7-12 as follows:

> Admits those allegations contained in paragraphs numbered
> 7, 8, 9, 10, 11, 12, but retain the right to assert failure to
> comply  with  New  York's  General  Municipal  Law  as  a
> defense to this suit.

(Answer, Docket No. 1-3, ¶ 5.)

By  including  paragraph  8  in  the  above  admission,  Defendants  seemingly

admitted  liability  on  Piasecki's  federal  claims  against  Deputy  Reed.    But  notably,

Defendants elsewhere denied each of paragraph 8's component parts.  For example,

Defendants denied that Deputy Reed acted pursuant to the authority of the County of

Erie (compare Complaint, ¶ 3 with Answer, ¶ 1) and neither admitted nor denied that

Deputy Reed acted in his official capacity as an Erie County Sheriff's Deputy (compare

Complaint,  ¶  5  with  Answer,  ¶  4).    So  too,  Defendants  denied  that  Deputy  Reed

deprived Piasecki of his federal constitutional right to be free of unlawful searches and

seizures (compare Complaint, ¶¶ 22, 46, 49 with Answer, ¶ 1) or his right to be free

from unlawful arrest or unlawful imprisonment (id.).  Moreover, Defendants denied that

Deputy Reed, either alone or in concert with others, used unreasonable and excessive

force against Piasecki at any time (compare Complaint, ¶¶ 45, 46, 49 with Answer, ¶ 1).

Finally, Defendants denied that Deputy Reed generally deprived Piasecki of his rights under the Fourth or Fourteenth Amendments (<u>compare</u> Complaint, ¶¶ 45, 46, 49 <u>with</u> Answer, ¶ 1).  Thus, Defendants' answer is internally inconsistent.

Fast forward to the dispositive motion phase of the litigation and May 31, 2022, when Piasecki argued that Defendants' motion for summary judgment should be denied on the basis that Defendants' admission to the liability allegations in paragraph 8 of the complaint alone could warrant a judgment in Piasecki's favor.  (Memorandum of Law, Docket No. 19-5, p. 5; Plaintiff's Statement of Material Questions of Fact, Docket No. 19-4, p. 6, ¶ 1.)

Ten days later, Defendants moved to amend their answer to correct what they characterized as an obvious typographical error—the mistaken inclusion of paragraph 8 among the General Municipal Law-related paragraphs they admitted in their answer. (Supporting Declaration of Jeremy C. Toth, Esq., Docket No. 20-1, ¶ 5.)  Piasecki argued in opposition that Defendants failed to establish good cause for their nearly 600-day delay in seeking to correct their error.  And he further argued that he would be severely prejudiced by amendment because he formulated his litigation and discovery strategies around the admission, including foregoing Deputy Reed's deposition. (Memorandum of Law, Docket No. 24, pp. 3-4; Declaration of Michael T. Coutu, Esq., Docket No. 23, ¶¶ 9-11.)  Defendants did not file a reply.

On November 10, 2022, Judge Foschio denied Defendants' motion to amend their answer.  (Docket No. 27.)  Applying Federal Rules of Civil Procedure 15 (a)(2) and 16 (b), Judge Foschio determined that Defendants had failed to establish good cause

for belatedly seeking to correct their answer and that Piasecki is "significantly prejudiced by the inability to depose [Deputy] Reed in order to provide evidence with which to oppose Defendants' pending summary judgment motion."  (See id. p. 7.)   Judge Foschio further found that Piasecki was entitled to rely on Defendants' admission in formulating his litigation strategy.  (See id. p. 8.)

### 2.  Parties' Arguments

Defendants object to Judge Foschio's decision.  They first argue that *de novo* review should apply under Rule 72 (b) of the Federal Rules of Civil Procedure because the decision is tantamount to granting Piasecki dispositive relief.  They further argue that under either *de novo* or clear-error-or-contrary-to-law review, see Fed. R. Civ. P. 72 (a), Judge Foschio's decision cannot stand because litigation should not turn on a mistake by counsel.  Specifically, they argue that they have demonstrated good cause to amend their answer, since they moved for relief within 10 days of discovering counsel's error, and that Piasecki is not unduly prejudiced, since the record does not support his claim that he strategically elected to forego Deputy Reed's deposition.

Piasecki did not respond to Defendants' objections.

### 3.  Analysis

A district judge may designate a magistrate judge to consider any pretrial matter pending before the court.  See 28 U.S.C. § 636 (b)(1).  If the pretrial matter is dispositive of a party's claim or defense, the magistrate judge must enter a recommended disposition—commonly known as a report and recommendation—including proposed findings of fact, when appropriate.  See Fed. R. Civ. P. 72 (b)(1).  If

the pretrial matter is not dispositive of a party's claim or defense, the magistrate judge may resolve it by issuing a written order.  See Fed. R. Civ. P. 72 (a).  The distinction is important because it determines the subsequent standard of review: dispositive matters are reviewed *de novo* by the district judge; non-dispositive matters are subject to the lesser clearly-erroneous-or-contrary-to-law standard.  See 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 72 (a) (clearly-erroneous-or-contrary-to-law standard); Fed. R. Civ. P. 72 (b)(3) (*de novo* review).

Here, Judge Foschio treated Defendants' motion to amend their answer as non-dispositive under 28 U.S.C. § 636 (b)(1)(A) and Rule 72 (a).  (See Decision and Order, Docket No. 27, p. 1 n.1.)  The clearly-erroneous-or-contrary-to-law standard would therefore apply.  But Defendants urge this Court to employ *de novo* review on the basis that Judge Foschio's order essentially grants Piasecki summary judgment on his federal claims against Deputy Reed.  This Court disagrees.

Judge Foschio's order is not dispositive.   Because Defendants denied the component parts of the allegations in paragraph 8 of the complaint elsewhere in their answer, the most that can be said is that Judge Foschio's order leaves Defendants' answer mixed and internally inconsistent, a circumstance of Defendants' own making.  It does not grant dispositive relief.   Piasecki himself makes no claim to summary judgment; he raises the admission only as a possible disputed issue of fact.  Consequently, this Court finds that the clearly-erroneous-or-contrary-to-law standard applies.  See Fed. R. Civ. P. 72 (a).

A magistrate judge's determination is clearly erroneous when "on the entire

evidence," the district court is "left with the definite and firm conviction that a mistake has been committed." Easley v. Cromartie, 532 U.S. 234, 243, 121 S. Ct. 1452, 149 L. Ed. 2d 430 (2001); (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)).  It is not enough that the district court may have decided the case differently.  See Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985); see also Xie v. JPMorgan Chase Short-Term Disability Plan, No. 15-CV-4546, 2018 WL 501605, at *1 (S.D.N.Y. Jan. 19, 2018) ("It is well-settled that a magistrate judge's resolution of a nondispositive matter should be afforded substantial deference and may be overturned only if found to have been an abuse of discretion.").  A magistrate judge's determination is contrary to law if it "fails to apply or misapplies relevant statutes, case law or rules of procedure." NIKE, Inc. v. Wu, 349 F. Supp. 3d 346, 353 (S.D.N.Y. 2018) (citation omitted).

Defendants have not established that Judge Foschio's decision is clearly erroneous or contrary to law.  The only argument Defendants made in support of their initial motion was that leave to amend should be freely granted under Rule 15 (a)(2) because their admission to paragraph 8 was obviously a minor clerical or typographical error.  Defendants did not recognize the applicable Rule 16 (b) good-cause standard, did not explain the delay in seeking to amend their pleading, and did not address the prejudice to Piasecki.  And even when Piasecki raised each of these points in opposition, Defendants failed to file a reply, despite having been afforded the opportunity to do so.  (See Text Order, Docket No. 21.)

Defendants now forcefully make arguments that should have been made before

Judge Foschio.  For example, they address the good-cause standard; they maintain that the error was not discovered until dispositive motions were filed; they contend that they acted diligently (within 10 days) in seeking leave to amend their answer after discovering the error; and they argue that Piasecki would not be unfairly prejudiced by amendment.  But with no explanation for why these arguments were not raised previously, they are too late.  See Aquavit Pharms., Inc. v. U-Bio Med, Inc., No. 19-cv-3351, 2020 WL 1900502, at *4 (S.D.N.Y. Apr. 17, 2020) ("The Court need not consider arguments and factual assertions that were not raised initially before the magistrate judge."); see also Trs. of Metal Polishers Local 8A-28A Funds v. Nu Look Inc., No. 18-cv-3816, 2020 WL 5793204, at *3 (E.D.N.Y. Sept. 29, 2020) (similar).

Accordingly, this Court finds no basis to conclude that Judge Foschio's decision is clearly erroneous or contrary to law.  Defendants' objections will therefore be denied.

## B.  Defendants' Motion for Summary Judgment

With the claims against the County of Erie and the Erie County Sheriff's Department dismissed, Defendants move for summary judgment in Deputy Reed's favor on Piasecki's federal and state constitutional claims for false arrest, illegal strip search,[3] and false imprisonment.  Defendants further argue that if this Court grants summary judgment as requested, it should decline to exercise jurisdiction over Piasecki's state law assault and battery claims.  Defendants' motion does not address Piasecki's

---

[3] Although Defendants reference moving for summary judgment on Piasecki's strip-search claim, they include no substantive arguments on that point.  This may be because it is unclear whether Deputy Reed is alleged to have personally conducted the strip search.  See supra, n. 2.  In any event, given the absence of any argument, this Court finds that Defendants have not moved for summary judgment on any remaining strip-search claim.

14

excessive force, due process, or free speech claims, which neither side elaborates on.

### 1. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment. Anderson, 477 U.S. at 252. A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); it must "offer some hard evidence showing that its version of the events is not wholly

fanciful," D'Amico v. City of N.Y., 132 F.3d 145, 49 (2d Cir. 1998).  That is, there must be evidence from which the jury could reasonably find for the nonmoving party. Anderson, 477 U.S. at 252.

In the end, the function of the court at the summary judgment stage is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249.  "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

### 2. Section 1983 and Personal Involvement

Piasecki brings his federal constitutional claims under 42 U.S.C. § 1983.  Civil liability is imposed under § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.  See 42 U.S.C. § 1983.  To succeed on a § 1983 claim, a plaintiff must establish that the challenged conduct "(1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Whalen v. Cnty. of Fulton, 126 F.3d 400, 405 (2d Cir. 1997); see also Hubbard v. J.C. Penney Dep't Store, 05-CV-6042, 2005 WL 1490304, at *1 (W.D.N.Y. June 14, 2005).

Personal involvement in the deprivation of a federal constitutional right is the *sine qua non* of liability under § 1983.  See Haygood v. City of New York, 64 F. Supp. 2d 275, 280 (S.D.N.Y. 1999).  It is well settled in this circuit that personal involvement by defendants in cases alleging constitutional deprivations is a prerequisite to an award of

damages under § 1983.  See McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977);

Richardson v. Coughlin, 101 F. Supp. 2d 127, 129 (W.D.N.Y. 2000); Pritchett v. Artuz,

No. 99 Civ. 3957 (SAS), 2000 WL 4157, at *5 (S.D.N.Y. Jan. 3, 2000).

Here, there is no dispute that Deputy Reed was personally involved in the claims

on which Defendants' seek summary judgment.

### 3. Fourth Amendment and New York False Arrest/False Imprisonment Claims

A false arrest claim brought under § 1983 and premised on the Fourth

Amendment right to be free from unreasonable seizure is analyzed the same as a claim

for false arrest/false imprisonment brought under New York law.  See Ackerson v. City

of White Plains, 702 F.3d 15, 19 (2d Cir. 2012) (per curiam) (citing Weyant v. Okst, 101

F.3d 845, 852 (2d Cir. 1996)).   The two claims are essentially synonymous.  See

Weyant, 101 F.3d at 853 (citing Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir.

1995)); Nix v. City of Rochester, No. 6:14-CV-06395 (MAT), 2017 WL 3387103, at *5

(W.D.N.Y. Aug. 5, 2017).

To succeed on a false arrest/false imprisonment claim, a plaintiff must show that

(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the

confinement, (3) the plaintiff did not consent to the confinement, and (4) the

confinement was not otherwise privileged.  See Willey v. Kirkpatrick, 801 F.3d 51, 70-71

(2d Cir. 2015) (quoting Broughton v. State of N.Y., 335 N.Ed.2d 310, 314 (N.Y. 1975));

Nix, 2017 WL 3387103, at *5.

Probable cause "is a complete defense to an action for false arrest brought under

17

New York law or § 1983." Ackerson, 702 F.3d at 19.  Thus, "[t]o avoid liability for a claim of false arrest, an arresting officer may demonstrate that either (1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity."[4] Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015); Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994); Walker v. City of New York, 15 CV 500 (NG)(ST), 2017 WL 2799159, at *3 (E.D.N.Y. June 27, 2017) ("An arrest is privileged when probable cause exists, and probable cause is, therefore, a complete defense to a claim for false arrest.") (citing Weyant).

Probable cause does not require "absolute certainty," see Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003), or "the same type of specific evidence of each element of the offense as would be needed to support a conviction," see Adams v. Williams, 407 U.S. 143, 149, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972).  It requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity."  Illinois v. Gates, 462 U.S. 213, 244 n. 13, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).

Probable cause to arrest or detain exists "when police officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  Walczyk v. Rio, 496 F.3d 139, 156 (2d Cir. 2007); see also Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015).  As a fluid concept dependent on "the assessment of probabilities in a particular factual context," probable cause is

---

4 Defendants do not seek summary judgment on the basis of qualified immunity.

determined based on the totality of the circumstances.  Gates, 462 U.S. at 232-33. Officers may rely on "those facts available to the officer at the time of the arrest and immediately before it," Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006), and they are "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest," Ricciuti v. N.Y. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997).  See also Panetta, 460 F.3d at 395-96 ("An officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause.").

When a victim or eyewitness reports a crime, probable cause will generally be found to exist, unless the circumstances raise doubt as to the veracity of the complaint. See Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006).  The victim or witness must be credible, and can be relied upon only "absent circumstances that raise doubts as to the victim's veracity." Singer, 63 F.3d at 119.  "The most common situation in which such doubt arises is when there exists a prior relationship between the victim and the accused that gives rise to a motive for a false accusation." Mistretta v. Prokesch, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998).  "When such a relationship exists, and is known to the arresting officer before the arrest is made, the complaint alone may not constitute probable cause; the officer may need to investigate further." Id.

To determine whether probable cause existed for an arrest, courts "assess whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006). "The probable cause determination is objective; it should be made without regard to the officer's subjective motives or belief as to the existence of probable cause." Picard v.

19

Torneo, 3:16cv1564 (WWE), 2019 WL 4933146, at *2 (D. Conn. Oct. 4, 2019); see also Whren v. United States, 517 U.S. 806, 813, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.")

It is the plaintiff's burden to establish the absence of probable cause, and whether probable cause existed may be decided as a matter of law, unless the pertinent facts and knowledge of the officer are disputed.  See Nickey v. City of New York, No. 11-CV-3207, 2013 WL 5447510, at *5 (E.D.N.Y. Sept. 27, 2013) ("[W]hen the facts material to a probable cause determination are undisputed, the matter is a question of law properly decided by the [c]ourt.").

### 4.  Analysis

Defendants do not dispute the first three elements of Piasecki's false arrest/false imprisonment claims—that Deputy Reed intended to confine Piasecki; that Piasecki was conscious of the confinement; and that Piasecki did not consent to the confinement. (Memorandum of Law, Docket No. 13-15, p. 11.)  But they seek summary judgment on the basis that the undisputed facts demonstrate that Deputy Reed had probable cause to arrest Piasecki, and therefore, the arrest was otherwise privileged.   This Court disagrees.

The entirety of Defendants' claim to summary judgment is that Deputy Reed had "firsthand" knowledge of Piasecki's conduct at Previty's residence on July 20, 2019, and therefore had probable cause to arrest him on July 31, 2019, notwithstanding the intervening events.  (Id., pp. 13-14.)  There is, however, no evidence in the record that

20

Deputy Reed had "firsthand" knowledge of Piasecki's conduct, and in fact, the undisputed evidence is to the contrary.

"Firsthand" knowledge equates to personal knowledge.   See *Firsthand Knowledge*, Black's Law Dictionary (11th ed. 2019).   *Black's* defines "personal knowledge" as "[k]nowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said." *Knowledge*, Black's Law Dictionary (11th ed. 2019).

Here, there is no evidence whatsoever that Deputy Reed had firsthand knowledge of any events involving Piasecki.  Deputy Reed was dispatched to Previty's house on July 20, 2019, and arrived after Piasecki had already left.  (Reed Aff., ¶ 11.) Any knowledge Deputy Reed gained that night he learned principally from Previty, not from his personal observation or experience.  (Id., ¶ 10.)  The same is true of the events of July 31, 2019: Deputy Reed was dispatched to Previty's residence and accepted her representations that texts from an unknown number were from Piasecki.  (Id., ¶¶ 23-25.) Again, Deputy Reed did not encounter Piasecki at the scene or personally observe or experience his conduct.  Thus, the undisputed evidence of record demonstrates that Deputy Reed *did not* have firsthand knowledge upon which he could rely for a probable cause determination.

Moreover, viewing the evidence in Piasecki's favor, this Court finds that a reasonable jury could determine that no probable cause existed solely from either of Deputy Reed's interactions with Previty, given the animus between Previty and Piasecki, of which Deputy Reed was aware.  See Mistretta, 5 F. Supp. 2d at 133

21

(discussing possible need for further investigation when the victim and the accused have a prior relationship that gives rise to a motive for false accusation).

Consequently, this Court finds that Defendants are not entitled to summary judgment on the only basis they offer—that Deputy Reed had probable cause to arrest Piasecki on July 31, 2019, due to his "firsthand" knowledge of Piasecki's previous conduct. Similarly, because summary judgment is denied, Defendants' dependent request that this Court decline to exercise jurisdiction over Piasecki's state law assault and battery claims is also denied.[5]

## IV. CONCLUSION

For the reasons stated above, Defendants' objections to Judge Foschio's order are denied; the entire third cause of action and all claims against the County of Erie and the Erie County Sheriff's Office are dismissed by agreement, and Defendants' motion for summary judgment is denied. What remains are the first, second, fourth, and fifth causes of action against Deputy Reed. Before proceeding to trial, the parties must re-engage in mediation to determine whether a pretrial resolution of this matter can be reached.

---

[5] Defendants' argument on this point is somewhat unclear. While it appears that the request is that this Court decline to exercise supplemental jurisdiction, Defendants also state that "there are no facts showing Plaintiff was assaulted by anyone and there has been no claim of excessive force under the United States Constitution." (Memorandum of Law, Docket No. 13-15, p. 15.) To the extent Defendants seek summary judgment outright on these grounds, this Court notes both that Piasecki testified to the force he claims was excessive and included a federal claim for excessive force in his complaint. (See Piasecki Dep., pp. 11, 38, 43; Complaint, ¶ 45.) Accordingly, any request for summary judgment on these grounds is denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that each claim against the County of Erie and the Erie County Sheriff's Department is DISMISSED.

FURTHER, that Plaintiff's third cause of action is DISMISSED in its entirety.

FURTHER, that Defendants' Objections (Docket No. 28) to the magistrate judge's Decision and Order (Docket No. 27) are DENIED.

FURTHER, that Defendants' Motion for Summary Judgment (Docket No. 13) is DENIED.

FURTHER, that the parties are DIRECTED to engage in additional mediation with Mediator Michael Menard by May 17, 2023.

FURTHER, that the parties must conclude their mediation efforts and file a joint written notice concerning the status of mediation by June 14, 2023.

SO ORDERED.


Dated:        April 18, 2023
              Buffalo, New York

                                        s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                    United States District Judge